## Hyndman *versus* Hogsett, et al.

1. Where all the evidence in a case, submitted to the court without a jury, is not printed, the Supreme Court will not decide whether or not there was error in the findings of fact or in those conclusions which were or might be based upon facts; but the statements of fact made by the court below will be taken as true.

2. An agreement to sell certain real estate, "binding in favor of the vendee and his heirs and against the vendor and his heirs," may be shown by parol evidence to have been intended by the parties thereto to be a personal privilege to the vendee and his heirs, excluding the right in the vendee to assign said agreement, as a part of the actual agreement, omitted by the scrivener through mistake, from the written contract.

February 2d, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, of *Fayette county:* Of January Term, 1886, No. 192.

Ejectment by E. K. Hyndman against Robert Hogsett, Abraham O. Tinstman, Arthur W. Bliss, and George C. Marshall, December 16th, 1881, for the undivided one eighth part of the nine foot vein of coal and all the minerals under the coal in those two tracts of land situate in North Union township, known as the Isaac Wood and Jacob Murphy tracts, containing 417 acres, more or less, and also 40 acres entire and in fee simple of the Jacob Murphy tract; reserving enough of said coal to support the surface; also a road to be left open across the 40 acres from the Station House on the Fayette County Railroad toward the mountain.  There are on said 40 acres of land 125 coke ovens, railroad tracks, engine and engine house, boilers and machinery, 20 dwelling houses, a brick factory for manufacturing bricks, brick kiln, dry house, steam engine and machinery and stables.  Damages are claimed and demanded in the sum of $10,000.

Plea: Not guilty.

By submission of the parties filed in the case the decision of the case was referred to the court without a jury.

The following facts appeared on the trial before STOWE, P. J., of the Court of Common Pleas of Allegheny county, No. 1, holding a special court in and for Fayette county:

[Hyndman *v.* Hogsett.]

On the 7th of August, 1871, William H. Baily, Robert Hogsett and several others, associated together and formed the partnership of Hogsett, Watt & Co. The firm was organized for the purpose of manufacturing coke out of the Connellsville vein of bituminous coal. The partners bought by written article of agreement from Mr. Hogsett a tract of land and coal at Mount Braddock, in North Union township, Fayette county, Pennsylvania, for $87,400. Mr. Baily was to pay one eighth of this sum, and was then to own one eighth of the land and coal. This is an action of ejectment brought by E. K. Hyndman against Robert Hogsett and his tenants for Wm. H. Baily's undivided eighth of the said land and coal, which became vested in Mr. Hyndman by an assignment from Mr. Baily, executed under the following circumstances:

The partnership of Hogsett, Watt & Co. continued in business for more than seven years, when Mr. Baily became financially embarrassed. In 1878 judgments were entered against him, and on the 29th day of November, 1878, his undivided one eighth in the said land and coal was about to be sold by the sheriff of Fayette county aforesaid, on a *venditioni exponas*, issued out of the Court of Common Pleas of that county, at No. 69 December Term, 1878.

On the day the interest to Mr. Baily was to be sold, before the hour of sale arrived Mr. Baily and Mr. Hogsett signed the following article of agreement. It was drawn by Mr. Boyle, who acted for both parties, and was delivered by them to him for safe keeping.

### ARTICLE OF AGREEMENT.

It is hereby agreed between Robert Hogsett and W. H. Baily as follows: That said Hogsett does hereby agree that if he should buy the interest of William H. Baily in the coal and other real property at Mt. Braddock, to be sold at sheriff's sale, being the one eighth, the interest in certain coal and land heretofore sold by said Hogsett to Baily by article of agreement, that he will, at any time hereafter within five years, sell and convey to said Baily said interest which may be so bought by him at Sheriff's sale, for the consideration of one dollar, and the balance now due said Hogsett by Baily on the purchase money for said one eighth under said article of agreement, and whatever sum said Hogsett may have to bid at sheriff sale, with interest from this date, less any profit said Hogsett may realize from said property, the said Hogsett to have the right also to charge against said Baily, and to be paid by him, his share of the debts of Hogsett, Watt & Co., which said Hogsett may pay, and any other debts which may be incurred in operating said property. The said Baily is to

make known his intention to purchase in writing, and if he should fail to do so within five years this agreement to be null and void. This agreement to be binding in favor of said Baily and his heirs and against said Hogsett and his heirs. Dated November 29th, 1878.

Mr. Hogsett attended the sheriff's sale and bought Mr. Baily's undivided eighth in the land and coal for $400. He immediately assumed exclusive possession of it, and has maintained the same ever since. Mr. Baily removed shortly after the sale to the State of Minnesota, where he now resides. After the sheriff's sale Mr. Baily took no part in the business of Hosgett, Watt & Co. Mr. Hosgett about that time became the sole owner of the partnership except one interest, and his possession of the entire land and coal is not now disputed by any one except the plaintiff in error, who is asserting the Baily title. A bill in equity is pending to ascertain the rights of another partner, but it is not supposed to effect this ejectment.

On the 29th of January, 1881, Mr. Baily assigned his rights under this article to E. K. Hyndman, who brought this suit. The assignment is as follows, viz.: "For value received, I hereby assign, transfer and set over unto E. K. Hyndman and his assigns, all my right, title and interest in this article of agreement, and all benefit and advantage to be derived therefrom." This assignment is under seal, duly acknowledged and recorded.

The following are the findings of fact by the court: The evidence shows Hogsett (one of the defendants) in possession of the property described in plaintiff's writ at the time suit was brought, and it is admitted that title was in him on the 7th of August, 1871, at which time he contracted to sell to Wm. H. Baily and four others (Harlan, Rankin, Taylor and Watt) the undivided five eighths of the nine foot vein of coal, etc., in certain lands at the rate of $200 per acre, and also the five eighths of forty acres of land at the rate of $100 per acre. The interest of Harlan, Rankin and Taylor, three of the parties, is now vested in Hogsett. That of Watt belongs to D. Kaine, Esq., and plaintiff claims he owns the interest of W. H. Baily under said contract as his assignee. After its execution Baily paid some $10,874.39 (as appears by the receipts on the agreement). His share of the original purchase was $10,925 without computing interest, which would seem to leave due and owing as principal and interest at the time tender was made 15th March, 1881, from $3,455 to $3,460. Baily failed, and his interest in the property having been seized on execution issued upon a judgment, viz.: Asa Harris v. Wm. H. Baily, No. 28, September Term, 1878, was sold

to defendant Hogsett, 29th November, 1878, and deed made him by the plaintiff dated and acknowledged December 19th, 1878.

Previous to the sheriff's sale and apparently the day it took place, Hogsett & Baily entered into the agreement above set out, by which it was agreed that if Hogsett should pay the interest of Baily in the property at sheriff's sale he would within five years sell and convey said interest to Baily for the consideration of $1 and the balance then due Hogsett on the purchase money, and whatever sum Hogsett might bid at sheriff's sale, with interest from that date, less any profit Hogsett might realize from the property, he to have the right also to charge against Baily and to have paid by him his share of the debts of Hogsett, Watt & Co., which Hogsett might pay, and other debts incurred in operating said property; Baily to make known his intention to purchase in writing within five years, otherwise the agreement to be void, and to be binding in favor of Baily and his heirs and against Hogsett and his heirs. The evidence shows the written agreement was intended by both parties to comprehend no other persons than the heirs of Baily, and that it was not intended to give Baily the right to assign his interest. On the 29th of January, 1881, Baily assigned all his interest under this last agreement to E. K. Hyndman by writing indorsed upon it, under seal. On the 15th of March, 1881, W. H. Coldren, Esq., attorney for Hyndman, tendered Hogsett $3,679.78, declaring to him that he did so for Hyndman as the amount due him (Hogsett) from Baily for his interest in Mt. Braddock (this property). Coldren mentioned the amount he was tendering Hogsett, who said he would see him day after to-morrow, and went away refusing to take the money. On the 15th of December, 1881, a motion, dated December 7th, 1881, was served on Hogsett by Hyndman, notifying him of the assignment to Hyndman of the article of agreement above referred to, and requiring him to have it recorded, as also the sheriff's deed for the property. It further appears from the evidence that Hogsett, Watt & Co. (by Hogsett) and *inter alia* Baily, leased the property in question to Samuel Colvin and J. Reed Torrence, August 29th, 1878, and the same Colvin and Chas. B. Murray, September 1st, 1879. On the first lease Hogsett got the rent. On the 28th of February, 1881, Hogsett sold the entire property to A. O. Tintsman for $49,000; 27th February, 1881, Coldren, as attorney for Baily, notified Hogsett that he was ready to pay him all the money and interest due him on the article of agreement, above recited, relative to the Mt. Braddock coal works, and that he was ready to comply with it according to the terms and effect. There is consider-

[Hyndman *v.* Hogsett.]

able evidence on part of plaintiff in regard to what the works earned or should have earned up to the time plaintiff signified his desire to pay and have a re-conveyance under the agreement of November 29th, 1878, but I am compelled to find the fact to be that there was a large amount due by Baily to Hogsett under the contract for re-conveyance of the property, if we take into consideration the sums properly expended for permanent and necessary improvements upon the works to make them productive, as I think under the agreement we are bound to do. How it may be without such improvements I am not able to say, as I have failed to get the balance sheets offered in evidence, which would likely show the exact amount. This, however, I do not deem material, as I find that in no case was the tender sufficient to cover the amount due Hogsett under the contract. The defendants also show that June 14th, 1878, the Dollar Savings Bank, of Uniontown, obtained judgment against Baily for $3,942.89, and that the property in suit was sold on a *pluries vend. ex.* No. 44, March Term, 1882, to R. H. Lindsey, Esq., and sheriff's deed executed and delivered to him for the same. Under these facts, I am of the opinion that plaintiff cannot recover in this suit.

1st. Because he has no right as assignee under the agreement between Baily & Hogsett to maintain this suit, without reference to the sufficiency of the tender.

2d. Even if plaintiff, under the assignment by Baily, was vested with his right and interest under said agreement, the tender was insufficient without reference to the profits of property, or the costs of operating it.

3d. The tender is greatly insufficient, taking into consideration the profits and costs of operating the property as comprehended by the terms of the agreement.

Judgment was entered for the defendants by the court, after overruling the plaintiff's exceptions to the findings of fact and conclusions of law by the court. These exceptions sufficiently appear in the assignments of error. The plaintiff took this writ assigning for error, *inter alia,*

1st. The court below erred in overruling the first exception of the plaintiff in error to the finding of the court below, which exception is as follows, viz.:

" The court erred in finding as follows, viz.: That the plaintiff cannot recover in this suit, 1st. Because he has no right as assignee under the agreement between Baily and Hogsett to maintain this suit without reference to the sufficiency of the tender."

2d. The court erred in overruling the second exception of the plaintiff in error to the finding of the court below, which exception is as follows, viz.:

In finding that, " 2d. Even if plaintiff under the assignment by Baily was vested with his rights and interests under said agreement the tender is insufficient."

3d. The court erred in overruling the third exception of the plaintiff in error to the finding of the court below, which exception is as follows, viz.:

In finding that " tender is greatly insufficient, taking into consideration the profits and costs of operating the property as comprehended by the terms of the agreement."

*Edward Campbell,* for plaintiff in error.

*R. H. Lindsey* (*Boyle* and *Mestrezat* with him), for defendants in error.

Mr. Justice GREEN delivered the opinion of the court March 1st, 1886.

This case was submitted to the court below without a jury trial. The learned judge has made certain findings of fact which bar the plaintiff's recovery in any aspect of his case. A part only of the testimony has been printed, and it is alleged by the defendant, and not denied by the plaintiff, that a much larger part of the testimony has not been printed, and it is therefore not before us. In the absence of the evidence, of course, we cannot say that there was error in the findings of fact, or in those conclusions which were or might be based upon facts. One of the most important findings, indeed a controlling one, is that the plaintiff as assignee of Baily had no right to maintain the action. The contract between Baily and Hogsett is, in terms, limited, so far as Baily is concerned, to him and his heirs. While it is true that a power of alienation results in all ordinary cases from the use of those words, yet it is also entirely consistent with them, especially where the substance of the grant is in the nature of a personal privilege, that " assigns " were not intended to be, and are not, possible partakers of the privilege, or other right granted. Upon this subject the learned court below made the following finding: " The evidence shows the written agreement was intended by both parties to comprehend no other persons than the heirs of Baily, and that it was not intended to give Baily the right to assign his interest." If this finding is correct it is fatal to the plaintiff's case. Can we say it is not correct? We have a part of the testimony only, and we have held, indeed we must hold, that we are bound by the statements of facts made by the court below where the evidence is not printed: Joyce *v.* Lynch, 17 W. N. C., 79. How can we say there was no evidence which justified this finding when we have but a part

of it? The argument against the correctness of the finding is founded solely upon the proposition that in legal effect the paper does include "assigns," though in fact they are omitted from the paper. But the mere inspection of the paper is not the only source of information upon this subject. It is something to the purpose of a contrary inference that while "heirs" of Baily are included in the grant, his "assigns" are excluded. We are not able to say that evidence that it was the intention of the parties to exclude them from the operation of the instrument is necessarily to be rejected. Such evidence, instead of contradicting the writing, would seem to be in accord with the meaning of the words employed. Some evidence is printed tending strongly to show that it was the expressed intention of both parties at the time, and immediately before, the paper was signed, that Baily's heirs and Hogsett's were to be included, and their assigns were to be excluded. One witness whose testimony, or a part of it, is printed, testified that he wrote the paper, and before it was signed, when he read it to the parties down to the last sentence, a discussion arose whether it included anybody but the parties themselves. He adds, "After I read that far Mr. Hogsett wasn't quite sure about that, and it was stated there, that it was to be a personal privilege to Mr. Baily, and Baily insisted on having his heirs in, and so I wrote the following clause: 'This agreement to be binding in favor of Baily and his heirs and against Hogsett and his heirs,' and wrote it with the understanding that it was to exclude the right to assign, and that was the agreement. Just simply to Baily and his heirs, and nobody else." If this evidence was believed, and there was no reason why it should not be, since it was delivered by a most respectable gentleman and contradicted by no one, it proves distinctly that the parties, having their attention drawn to the subject, just before signing, mutually agree that "heirs" were to be included and "assigns" excluded, and that the scrivener undertook to express that meaning in the paper, and wrote an additional clause for that very purpose. If, in framing that clause, he failed to express that intent, it was a clear case of mistake of the scrivener, and comes within an unbroken line of decisions in this State and elsewhere permitting parol evidence to be given to show that a part of the actual agreement of the parties was omitted by mistake from the written contract. What other evidence there was, if any, which justified the finding of the court on this subject we do not know, but it is very clear that we cannot say, in the condition of the record as contained in the paper book, that the finding was erroneous for want of testimony—for want of proof of those facts which justify the

[Hyndman *v.* Hogsett.]

admission of parol testimony in such a case. We therefore sustain the finding in this respect. As this destroys the plaintiff's case it is not necessary to consider the subject of tender in detail. The court found that no adequate tender was ever made, and it does not appear that after the evidence was given showing what ought to have been the amount, any tender of any kind was made at any stage of the trial. Usually this is necessary where the amount is not precisely known. As the result of the case does not depend upon a critical examination of either the law or the facts affecting this branch of the controversy, we pass the subject by without further comment.

A suggestion was made, though not pressed, that Hyndman was an innocent purchaser for value without notice, and as such could assert rights higher than his vendor's. It is only necessary to say that the printed testimony fails to disclose that he ever paid any actual money or property for the assignment; the assignment itself recites nothing but " value received " as the consideration, and in addition to that the very words of the instrument were sufficient to put him upon inquiry as to the rights of " assigns " under its operation. Moreover, the character of the instrument, involving practically the grant of a personal privilege, involves the question whether the rights of an innocent purchaser for value without notice have any place in such a transaction, and in addition to that, in the absence of the testimony, we are not sufficiently informed as to whether there was evidence affecting Hyndman's legal right to assert his position as an innocent purchaser for value and without notice.

Judgment affirmed.